IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ARROWOOD INDEMNITY COMPANY, :
f/k/a ROYAL INDEMNITY COMPANY, :
                      :
       Plaintiff/ :
       Counterclaim Defendant, :
                      :
   v. :
                      :
HARTFORD FIRE INSURANCE : C.A. No. 09-166-LPS
COMPANY, :
                      :
       Defendant/ :
       Cross-Claim Defendant/ :
       Counterclaim Plaintiff, :
                      :
       and :
                      :
STUDENT FINANCE CORPORATION, :
                      :
       Defendant/ :
       Counterclaim Defendant/ :
       Counterclaim and Cross- :
       Claim Plaintiff. :

Peter M. Gillon, Esquire and Geoffrey J. Greeves, Esquire of PILLSBURY WINTHROP SHAW
PITTMAN LLP, Washington, D.C. Dennis A. Meloro, Esquire and Victoria W. Counihan,
Esquire of GREENBERG TRAURIG, LLP, Wilmington, Delaware. Attorneys for Plaintiff.

Arthur N. Lambert, Esquire; Daniel W. White, Esquire; and Christie M. Bird, Esquire of
FRENKEL LAMBERT WEISS WEISMAN & GORDON, LLP, New York, New York.
Michael P. Migliore, Esquire, of SMITH, KATZENSTEIN & JENKINS LLP, Wilmington
Delaware. Attorneys for Defendant Hartford Fire Insurance Company.

Charlene D. Davis, Esquire; Ashley B. Stitzer, Esquire; and Justin R. Alberto, Esquire of
BAYARD, P.A., Wilmington, Delaware. Sherilyn Pastor, Esquire and Craig W. Davis, Esquire
of MCCARTER & ENGLISH LLP, Newark, New Jersey. Attorneys for Charles A. Stanziale,
Jr., Chapter 7 Trustee for Student Finance Corp.

## MEMORANDUM OPINION

March 30, 2011
Wilmington, Delaware

**Stark, District Judge:**

Pending before the Court is a Motion For Summary Judgment (D.I. 72) filed by

Defendant Hartford Fire Insurance Company, as well as a Motion For Partial Summary Judgment

(D.I. 74) and a Motion To Strike Certain Documents Relied Upon By Defendant Hartford Fire

Insurance Company In Its Motion For Summary Judgment And Opposition To Plaintiff's Motion

for Summary Judgment (D.I. 93) filed by Plaintiff Arrowood Indemnity Company f/k/a Royal

Indemnity Company. For the reasons discussed, Plaintiff's Motion To Strike will be granted in

part and denied in part. Defendant's Motion For Summary Judgment will be denied, and

Plaintiff's Motion For Partial Summary Judgment will be granted in part and denied in part.

## BACKGROUND

### I.    Procedural Background

The bankruptcy case underlying the present action was initiated on June 5, 2002 by the

filing of an involuntary petition for relief under Chapter 7 of the Bankruptcy Code naming

Student Finance Corporation ("SFC") as a debtor.[1]  On February 26, 2008, the United States

Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") modified the automatic

stay imposed by 11 U.S.C. § 362 in connection with the SFC bankruptcy proceeding (D.I. 2, Ex.

A), and on August 22, 2008, Plaintiff Arrowood Indemnity Company, f/k/a/ Royal Indemnity

Company ("Royal") initiated this adversary action against Defendants Hartford Fire Insurance

Company ("Hartford") and SFC in the Bankruptcy Court, Adv. No. 08-51398 (the "Adversary

Proceeding"). (D.I. 1, Ex. B)

On September 29, 2008, Hartford filed a motion to withdraw the reference of the

---

[1]Charles A. Stanziale is the Chapter 7 Trustee for SFC (the "Trustee").

1

Adversary Proceeding pursuant to 28 U.S.C. § 157(d) (the "Withdrawal Motion") with the Bankruptcy Court. (*See* D.I. 3, Ex. I at ¶ 2 at 2) Thereafter, on February 17, 2009 the parties entered into the Stipulation to Withdraw Reference of Adversary Proceeding to United States Bankruptcy Court (the "Stipulation"). (D.I. 3, Ex. I) The parties agreed that upon approval of the Stipulation by this Court, the Withdrawal Motion would be resolved by the Stipulation, the reference of the Adversary Proceeding to the Bankruptcy Court would be withdrawn to this Court, and the record in the Adversary Proceeding would be transferred from the Bankruptcy Court to this Court. (*See id.* at 2-3) In addition, the Stipulation also contained an agreed-upon expedited discovery schedule, schedule for dispositive motions, and proposed modified Rule 16 scheduling order. (*See id.* at 3-5) The Adversary Proceeding was subsequently transferred to this Court on March 13, 2009. (*See* D.I. 1, Hartford's Motion to Withdraw the Reference of the [] Adversary Proceeding Pursuant to 28 U.S.C. § 157(d); *id.* at 1-6, Transmittal Sheet for Withdrawal of Reference to the U.S. District Court for the District of Delaware; D.I. 2; D.I. 3; D.I. 4) Following a hearing on June 18, 2009, this Court granted an extension of time to complete discovery (*see* D.I. 21; 6/19/09 Oral Order), and later entered Orders on July 1, 2009 (D.I. 27; D.I. 28) approving the parties' agreed-upon Amended Stipulation and Second Modified Rule 16 Scheduling Order (*see* D.I. 26).

Hartford and Royal both filed their Motions For Summary Judgment on January 27, 2010. Royal filed its Motion To Strike on February 24, 2010.

## II.    **Factual Background**

### A.    **The Parties**

Royal is a Delaware corporation with its principal place of business in Charlotte, North

2

Carolina. (D.I. 1, Ex. B ¶ 3)

Hartford is a Connecticut corporation licensed to do business in Delaware. (*Id.* ¶ 4) Hartford sells insurance policies providing coverage for numerous types of risk, including losses arising out of employee fraud and dishonesty. (*Id.* ¶ 5)

SFC was a Pennsylvania corporation with its principal place of business in Delaware. (*Id.* ¶ 6) SFC was a provider and servicer of student loans originated by commercial truck driving schools. (*Id.*) From the late 1990's through early 2000's, Royal issued eleven separate credit risk insurance policies to SFC. (*Id.* ¶ 23)

## B.    The Allegations

The parties' dispute stems from a Financial Institution Bond (the "Bond") issued by Hartford to SFC in January 2002. The Bond, covering the period from January 31, 2002 through January 31, 2003, is a fidelity bond which protects the insured against losses resulting from certain dishonest and fraudulent acts of its officers and employees. (*Id.* ¶ 26) Student Finance was forced into involuntary bankruptcy in June 2002 and, in July 2002, Royal provided notice to Hartford that it was making a claim under the Bond. (D.I. 76, Ex. 11, Sept. 2009 Bogdan Dep. at 36-37) In 2003, Hartford closed its file on Royal's claim due to inactivity. (Sept. 2009 Bogdan Dep. at 126-27) In March 2008, following the Bankruptcy Court's granting Royal relief from the automatic stay, Royal submitted proof of loss under the Bond to Hartford. (D.I. 76, Ex. 19) Hartford denied Royal's claim on August 19, 2008. (*Id.* Ex. 22)

Aside from these basic facts, much else is disputed about the relevant events, both before and after initiation of the SFC bankruptcy proceeding. Royal contends that SFC's business plan, though ultimately unsustainable, was legitimate. (D.I. 75 at 9-10) According to Royal, SFC was

3

the victim of fraudulent acts committed by Andrew Yao ("Yao"), its sole shareholder. (*Id.* at 10) Specifically, Royal alleges that "Yao caused SFC and its affiliated companies to place or acquire thousands of student loans that failed to meet SFC's underwriting guidelines," and that "Yao's plan was to disguise these poor quality loans as performing loans in order to sell them to investors through securitizations, using Royal as the unwitting ultimate guarantor." (D.I. 1, Ex. B ¶¶ 33-34) Royal also alleges that Yao was misappropriating corporate funds for his own personal use. (*Id.* ¶ 42)

According to Hartford, SFC was a fraudulent enterprise – specifically, a Ponzi scheme organized with the purpose of defrauding its lenders, investors, and insurers. (D.I. 73, at 1) Hartford contends that SFC perpetuated this scheme by making "forbearance payments" without the knowledge or request of the student borrowers, with the intent of masking actual default rates. (*Id.* at 4-5) Hartford also notes that, in the six years between SFC's involuntary bankruptcy filing and the commencement of this action, the Trustee and Royal have consistently characterized SFC as a fraudulent enterprise, despite their disclaimer of that position here. (*Id.* at 2)

## C. **The Claims**

Royal maintains that it suffered significant losses as a result of Yao's fraudulent acts or dishonesty, and that it is entitled to recover jointly with SFC on such losses pursuant to the Bond. (D.I. 1, Ex. B ¶¶ 56, 58) As a result of Hartford's denial of coverage, Royal filed the instant action. By its Adversary Complaint, Royal asserts the following claims against Hartford and SFC: declaratory judgment (Count I); breach of contract (Count II); and reformation (Count III).

Hartford asserts sixteen affirmative defenses, alleging *inter alia*, that: (i) the Bond does

4

not cover fraudulent acts of the insured (First Affirmative Defense); (ii) SFC was the alter ego of Andrew Yao, and that any fraud committed by him is imputed to SFC (Third Affirmative Defense); (iii) Hartford did not receive notice of loss within 30 days of SFC's discovery of the alleged loss, as required by the Bond (Sixth Affirmative Defense); (iv) Hartford did not receive proof of loss as required by the Bond (Seventh Affirmative Defense); (v) Royal is not a named insured under the Bond and is barred from bringing any action under the Bond (Eighth Affirmative Defense); (vi) the action is untimely under the suit limitations provision of the Bond (Ninth Affirmative Defense); (vii) the Bond is void *ab initio* (Twentieth Affirmative Defense); (viii) that the Bond is subject to rescission (Twenty-First and Twenty-Second Affirmative Defenses); and (ix) recovery is barred because SFC made fraudulent and material misrepresentation in applying for the Bond (Twenty-Third Affirmative Defense). Hartford also asserts four counterclaims against Royal: that the bond is void *ab initio* (First Counterclaim); that the Bond is subject to rescission on contractual and common law bases (Second and Third Counterclaims); and that recovery under the Bond is barred because SFC made fraudulent and material misrepresentation in applying for the Bond (Fourth Counterclaim).

The Trustee asserts the following four counterclaims/cross-claims against Royal and Hartford, respectively: declaratory judgment (Count I); breach of contract (Count II); breach of the implied covenant of good faith and fair dealing (Count III); and turnover of the property of the estate pursuant to 11 U.S.C. § 542(a) (Count IV).

## MOTION TO STRIKE

By its Motion to Strike, Royal seeks to have the following categories of documents stricken from the Court's consideration in adjudicating the pending Motions For Summary

5

Judgment: (1) testimony from prior cases; (2) pleadings and opinions from prior cases; (3) the affidavit of Lawrence R. Fish (the "Fish Affidavit"); and (4) expert materials. (D.I. 93)[2] The Court will address each category in turn.

## I.   Prior Testimony[3]

Royal contends that Hartford cannot rely on the prior deposition testimony of Diane Messick, Gary Hawthorne, or Charles Stanziale because it is hearsay and does not fall into the hearsay exception for prior testimony under Rule 804(b)(1) of the Federal Rules of Evidence. Specifically, Royal contends that Messick, Hawthorne, and Stanziale are all available to testify, and that the issues in this suit are different than those in the suit for which they were previously deposed. In addition, Royal argues that the prior depositions would not be admissible under Federal Rule of Evidence 403 because the danger of unfair prejudice outweighs the probative value of the evidence. (*Id.* at 4-6)

In response, Hartford contends that Royal has not clearly identified its objections. (D.I. 108 at 5) Hartford contends that the prior deposition testimony of Messick is an adoptive admission under Rule 32 of the Federal Rules of Civil Procedure, that the prior deposition

---

[2]The Trustee joins in the arguments advanced by Royal in its Motion to Strike (D.I. 93) and reply in support thereof (D.I. 114). (*See* D.I. 94; D.I. 117)

[3]Specifically, Royal seeks to strike the following prior testimony: (1) Charles A. Stanziale April 2007 deposition testimony; (2) Frank Martinez November 1999 deposition testimony; (3) Peg Hirst November 1999 deposition testimony; (4) Patricia Kartha November 1999 deposition testimony; (5) Tian Zhong Ding November 1999 deposition testimony; (6) Kirk Monteverde July 2004 deposition testimony; (7) Diane Messick February 2003, August 2006 and December 2006 deposition testimony; (8) Diane Messick April 14, 2006 declaration; (9) Gary Hawthorne November 1999, July 2003, March 2004, April 2006, and April 2007 deposition testimony; and (10) Perry Turnbull November 1999 and August 2003 deposition testimony. (D.I. 93, at 2-3)

testimony of Hawthorne is admissible under Rule 801(d)(2)(A)-(D) of the Federal Rules of Evidence, and that the prior deposition testimony of Stanziale is admissible under Rule 801(d)(1) and Rule 801(d)(2)(A) as well as an adoptive admission. (*Id.* at 31) Finally, Hartford contends that the remainder of the contested deposition testimony is "admissible under the residual hearsay exception of Rule 807, as well as constituting evidence of judicial estoppel and judicial admissions." (*Id.*)

In relevant part, Rule 32 of the Federal Rules of Civil Procedure provides that deposition testimony from an earlier action "may be used in a later action involving the same subject matter between the same parties, or their representatives or successors in interest, to the same extent as if taken in the later action." Further, "[a] deposition previously taken may also be used as allowed by the Federal Rules of Evidence." (*Id.*) In turn, Rule 804(b)(1) of the Federal Rules of Evidence provides that the prior deposition testimony of a witness is not hearsay if the declarant is unavailable and if the party against whom the testimony is now offered "had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."

Hartford has made no showing that Stanziale, Martinez, Hirst, Kartha, Ding, Monteverde, Messick, Hawthorne, or Turnbull are unavailable to testify in this action. Moreover, Hartford's contention that the prior Messick, Hawthorne, and Stanziale depositions are admissible under Rule 801(d) is unavailing. First, Rule 801(d)(2)(A) is inapplicable, as Messick, Hawthorne, and Stanziale are not parties to the instant action in their personal capacities. Further, Stanziale's and Messick's previous depositions are not adoptive admissions merely because they affirmed that their prior testimony was accurate in subsequent depositions. The doctrine of "adoptive

7

admissions," embodied in Rule 801(d)(2)(B), provides that

> in certain circumstances, a party's agreement *with a fact stated by another* may be inferred from (or "adopted" by) silence. Such an inference may arise when (i) a statement is made in a party's presence, (ii) the nature of the statement is such that it normally would induce the party to respond, and (iii) the party nonetheless fails to take exception.

*U.S. v. Miller*, 478 F.3d 48, 51 (1st Cir. 2007) (internal citations omitted; emphasis added). With regard to the challenged Stanziale and Hawthorne depositions, Hartford has failed to establish that the prior deposition testimony of either Stanziale and Hawthorne was a "statement by a person authorized by [SFC] to make a statement concerning the subject," Fed. R. Evid. 801(d)(2)(C), or a "statement by [SFC]'s agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship," Fed. R. Evid. 801(d)(2)(D).

Accordingly, as Hartford has not established its admissibility, the Court will not consider the deposition testimony from prior actions for purposes of evaluating summary judgment. However, the Court declines to strike the contested testimony at this time because the Court cannot preclude the possibility that the testimony may be admissible at trial.

## II.  Prior Pleadings And Opinions[4]

Royal contends that Hartford cannot rely on citations to pleadings from prior cases as evidence because they are inadmissible as hearsay, and inadmissible under Rule 403 because the probative value of the evidence is outweighed by the danger of unfair prejudice.  (D.I. 93 at 5-6) In response, Hartford contends that its reliance on prior litigation documents, including pleadings, motions, and opinions, is appropriate.  Hartford contends that Royal has not clearly identified their objections or specified the evidence to which it objects.  (D.I. 108 at 5) Specifically, Hartford contends that these documents: (1) are party admissions under Rule 801(d)(2), (2) are admissible for purposes of judicial estoppel, and (3) constitute judicial admissions.  (*Id.* at 7-9, 29-30)

The Court concludes that the challenged prior pleadings do not constitute party admissions by Royal under Rule 802(d).  Hartford largely relies on *Dugan v. EMS Helicopters*, 915 F.2d 1428 (10th Cir. 1990), for its contention that pleadings in related cases are evidentiary admissions.  However, *Dugan* held that allegations from prior inconsistent pleadings are considered evidentiary admissions against interest in subsequent litigation "where a plaintiff files

---

[4]Specifically, Royal seeks to strike the following pleadings and opinions from prior cases: (1) pleadings in *Stanziale v. McGladrey & Pullen, LLP*, C.A. No. 05-00072 (D. Del.); (2) pleadings and motions submitted by Royal in *MBIA Ins. Corp. v. Royal Indemn. Co.*, C.A. No. 02-1294 (D. Del.); (3) pleadings and motions submitted by Royal in *In re Student Finance Corp.*, Case No. 02-116220 (Bankr. D. Del.); (4) pleadings submitted by Royal in *Royal Indemn. Co. v. Pepper Hamilton LLP*, C.A. No. 05-165; (5) complaint in *Stanziale v. Royal*, Adv. Proc. No. 04-53306 (Bankr. D. Del.); (6) complaint in *Stanziale v. Pepper Hamilton*, C.A. No. 04-1551 (D. Del.); (7) complaint and answer/counterclaims in *Nielsen Elec. Institute v. Student Finance Corp.*, C.A. No. 99-285 (D. Del.); (8) Royal's discovery responses in *Royal Indemn. Co. v. Pepper Hamilton and MBIA Ins. Corp.*; (9) opinion in *MBIA Ins. Corp. v. Royal Indem. Co.*, 426 F.3d 204 (3d Cir. 2005); and (10) opinion in *MBIA Ins. Corp. v. Royal Indem. Co.*, 286 F. Supp. 2d 347 (D. Del. 2003).  (D.I. 93 at 3)

a lawsuit against *different defendants for the same injuries.*" *Dugan*, 915 F.2d at 1432 (emphasis added). This is not the situation presented here. Here, the pleadings Royal seeks to strike are not pleadings from lawsuits Royal filed against different defendants for the same injuries Royal alleges here. In particular, the pleadings Royal seeks to strike do not pertain to whether Royal could collect on a claim Royal now brings against Hartford under the Bond. In the Court's view, the prior pleadings, all of which apparently relate generally to the underlying SFC bankruptcy, do involve the same alleged injuries as the instant action, and, therefore, are not admissible as party admissions.

Additionally, the Court concludes that the prior pleadings and opinions are not admissible under the doctrine of judicial estoppel. Judicial estoppel should be applied where: (1) the party to be estopped has taken two positions that are "irreconcilably inconsistent;" (2) "the party changed his or her position in bad faith – i.e., with the intent to play fast and loose with the court;" and (3) "no lesser sanction would adequately remedy the damage done by the litigant's misconduct." *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319-20 (3d Cir. 2003) (internal quotation marks omitted). Royal contends that its positions are not inconsistent because the previous cases involved claims on the credit risk insurance policies, and that it was not until this case that Royal became concerned with "dissecting the who, what, where and when of fraud at SFC" because this case involves employee dishonesty and a claim against a fidelity bond. (D.I. 114 at 6) The Court agrees. In addition, Hartford makes no argument with respect to bad faith.

Further, "[j]udicial admissions are formal concessions in the pleadings, or stipulations by the party or its counsel that are binding on the party making them." *Parilla v. IAP Worldwide*

10

*Serv., VI, Inc.*, 368 F.3d 269, 275 (3d Cir. 2004). The Court concludes that the pleadings from prior litigation do not constitute binding judicial admissions in the instant action. *See Glick v. White Motor Co.*, 458 F.2d 1287, 1291 (3d Cir. 1972) ("Judicial admissions are binding *for the purpose of the case in which the admissions are made* including appeals . . . .") (emphasis added); *see also Rottmund v. Cont'l Assurance Co. et al.*, 761 F. Supp. 1203, 1207 (E.D. Pa. 1990) (finding that allegation made by defendants in prior action was not binding admission – nor conclusive of facts – in subsequent case).

Finally, with regard to Hartford's contention that the prior pleadings and opinions should be judicially noticed, Rule 201 of the Federal Rules of Civil Procedure provides that judicial notice can be taken of adjudicative facts which are "not subject to reasonable dispute in that [they are] either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Civ. P. 201(a)-(b). In the Court's view, Hartford has not proven that these elements are met, although the Court cannot preclude the possibility that the prior pleadings and opinions are appropriate for judicial notice. Accordingly, the Court will not consider the prior pleadings and opinions for purposes of summary judgment, but nonetheless declines at this time to strike these materials from trial.

### III.     Fish Affidavit

Royal contends that Paragraphs 15-47 of the Fish Affidavit, and accompanying exhibits, should be stricken because the record does not establish the personal knowledge of the affiant, Mr. Fish. In response, Hartford contends that the personal knowledge requirement has been satisfied and, moreover, that the Fish Affidavit is independently admissible as a summary of

11

voluminous documents. (D.I. 108 at 31-32)

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, an affidavit supporting or opposing summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(d). "[T]he affiant must ordinarily set forth facts, rather than opinions or conclusions." *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir. 1985).

The Court concludes that paragraphs 15-47 of the Fish Affidavit should be stricken. Paragraphs 15-47 purport to testify, *inter alia*, to the fact that SFC was a fraudulent business and that SFC was insolvent because it was a Ponzi scheme, and to the knowledge and state of mind of SFC, its officers and directors, and Royal. However, there is no showing in the affidavit that Mr. Fish, a Manager in the Bond Claim Department at Hartford, has personal knowledge of any of these alleged facts. Rather, the affidavit amounts to arguments and opinions based on evidence and pleadings from other actions related to SFC's bankruptcy (which, in and of themselves, may not be admissible). There is no indication that Mr. Fish is competent to testify to the nature of these actions.

## IV.   Expert Materials

Royal contends that the Certification of Wayne D. Geisser, as well as all expert reports from prior cases (including the May 2007 and July 2007 Harry Steinmetz reports), should be stricken. According to Royal, Mr. Geisser's certification is an improper affidavit for summary judgment purposes because it is not based on personal knowledge and does not set out facts that would be admissible in evidence. Royal generally contends that the other expert reports are hearsay and not within any exception to the hearsay rule. (D.I. 93 at 8-9)

12

In response, Hartford contends that the Geisser Certification and Report was based on Mr.

Geisser's direct personal knowledge, but, in any event, there is no requirement that an expert

have direct personal knowledge of the facts forming the basis of his opinion. Moreover, expert

reports are not inadmissible hearsay under Rule 702 of the Federal Rules of Evidence. (D.I. 108

at 34-35) Hartford argues that it did not submit the Steinmetz reports cited by Royal in support

of its Motion For Summary Judgment. Further, Hartford contends that the other Steinmetz

reports are admissible as party admissions, judicial admissions, evidence of judicial estoppel,

prior inconsistent statements, residual hearsay, and adoptive admissions. (*Id.* at 37)

The Court concludes that the Geisser Certification and Report is appropriate for

consideration at summary judgment and will not be stricken. Contrary to Royal's assertion that

Federal Rules of Evidence 702 and 703 are irrelevant to the dispute presented here, consideration

of these Rules as well as Fed. R. Civ. P. 56(e) is appropriate. *See Colgan v. Fisher Sci. Co.*, 935

F.2d 1407, 1423 n.15 (3d Cir. 1991) (stating that in rejecting expert affidavit from consideration

on summary judgment, district court's citation to Fed. R. Civ. P. 56 "was not in itself

determinative as it should have been considered in tandem with Fed. R. Evid. 703"). Pursuant to

Rule 703, an expert may base his opinion on facts or data "made known to [him] at or before the

hearing." The Court finds that Mr. Geisser has adequately set out the facts made known to him

on which he bases his opinion. Given that Royal does not challenge his competency, the Court is

satisfied that the Geisser Certification and Report are appropriate for summary judgment

consideration.[5] The Court will not, however, consider expert reports from prior actions, as

_____

[5]Should Royal wish to challenge Mr. Geisser's competency at a later time, it is free to do
so.

Hartford has not adequately established that they are admissible as party admissions, judicial admissions, evidence of judicial estoppel, prior inconsistent statements, residual hearsay, and/or adoptive admissions.

## MOTIONS FOR SUMMARY JUDGMENT

By its Motion For Summary Judgment, Hartford contends that it is entitled to summary judgment on all claims and cross-claims asserted by Royal and the Trustee. (D.I. 72; D.I. 73 at 38) By its Motion For Partial Summary Judgment, Royal contends that it is entitled to summary judgment on all counterclaims asserted by Hartford, as well as on Hartford's Third, Sixth, Seventh, Ninth, Twentieth, Twenty-First, Twenty-Second, and Twenty-Third Affirmative Defenses. (D.I. 74; D.I. 75 at 32)

## I.     Legal Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 415 U.S. 574, 586 n.10 (1986). A party asserting that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant

must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 415 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 411 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 411 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

## II. Discussion

### A. Whether The Trustee Is Barred From Recovering Under The Bond[6]

#### 1. Whether The Trustee Is Barred From Recovering Under The Bond Because Of SFC's Own Fraud

##### i. Whether SFC Was A Ponzi Scheme

By its Motion (D.I. 72), Hartford contends that there is no issue of material fact that SFC

was operating as a fraudulent enterprise, and that it was acting in concert with Yao to perpetuate

the fraud. (D.I. 73 at 14) According to Hartford, since SFC was itself a fraud, it cannot recover

under the Bond, as public policy forecloses an insured from profiting from his own wrongdoing

by way of indemnity. (*Id.* at 14-15) In response, Royal and SFC contend that SFC was a fully

functioning, legitimate student loan business. (D.I. 85 at 17-18) Also, under the Bond's Insuring

Agreements, Hartford agreed to indemnify SFC for:

> (A) Loss resulting directly from dishonest or fraudulent acts
> committed by an Employee acting alone or in collusion with
> others.
>      Such dishonest or fraudulent acts must be committed by the
> Employee with the manifest intent:
>           (a) to cause the Insured to sustain such loss; and
>           (b) to obtain financial benefit for the Employee or another
> person or entity

(D.I. 76, Ex. 22, Bond at p. 2, "Fidelity") Royal apparently concedes that if SFC itself was a

_____

[6]For purposes of this section, the Court notes that the Trustee essentially stands in the shoes of SFC. Therefore, the Trustee is permitted, or barred from, recovery under the Bond to the same extent that SFC would be. *See Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*, 267 F.3d 340, 356 (3d Cir. 2001). Further, the Trustee joins in the arguments advanced by Royal in this section (except for any arguments or statements made by Royal in support of its reformation claim). (*See* D.I. 88, Joinder)

fraudulent enterprise, the Bond does not provide indemnity coverage to SFC for losses resulting from its own fraudulent acts. Accordingly, the Court only considers if there is a genuine issue of material fact concerning whether SFC was a fraudulent enterprise.

The Court concludes that the record contains evidence from which a reasonable factfinder could find that SFC was not a fraudulent enterprise but was, instead, a legitimate provider and servicer of student loans. In support of its contention that SFC was a legitimate business, Royal presents evidence that SFC had a board of directors which met regularly (although informally), and an executive committee which met monthly to plan and monitor company business and approve major activities. (D.I. 86, Ex. C, Oct. 2009 Hawthorne Dep. at 313-21) Moreover, SFC's Controller and President/Chief Operating Officer testified in this action that the forbearance payments were part of SFC's business model, and were made to assist students having temporary problems making loan payments. (*Id.* Ex. B, Aug. 26, 2009 Messick Dep. at 24, 493; Oct. 2009 Hawthorne Dep. at 67)

There is, of course, evidence to the contrary. For instance, Hartford's expert, Wayne D. Geisser, opines that SFC was a Ponzi-like scheme perpetuating a fraud on loan investors, creditors, and insurers/guarantors. (D.I. 73, Geisser Cert. ¶ 8) According to Mr. Geisser, most of the student loans processed by SFC were of poor quality; SFC would bundle and package groups of student loans into securities; and the sale of these securities to private investors resulted in the flow of large pools of cash into SFC. (*Id.* ¶¶ 16-17) In turn, the cash was then largely used to fund forbearance payments and withdrawals by Yao. (*Id.* ¶ 18) Mr. Geisser opines that SFC's systematic use of forbearance payments, in which SFC would make payments to student loans in precise amounts designed to prevent them from going into default, was essential to the scheme

17

and concealed the actual high default rates on the loans. (*Id.* ¶¶ 20-21)

Taking the evidence in the light most favorable to Royal, the Court concludes that a genuine issue of material fact exists over whether SFC was a fraudulent enterprise. Accordingly, Hartford is not entitled to summary judgment on this basis.

### ii.    Whether SFC Was The Alter Ego Of Andrew Yao

Royal maintains that SFC was not a fraudulent enterprise, but rather, was the victim of Yao's fraudulent acts. By its Motion For Summary Judgment, Hartford contends that SFC was Yao's alter ego and, therefore, Hartford is entitled to summary judgment because any fraud committed by Yao is imputed to SFC. (D.I. 73 at 16-18) In response, and by its Motion For Summary Judgment, Royal contends that the alter ego defense is inapplicable in the instant action. (D.I. 75 at 17; D.I. 85 at 19) Royal argues that in the context of fidelity bonds, an alter ego defense is not a common law defense but, rather, is a defense which derives solely from policy language. According to Royal, the Bond does not permit assertion of an alter ego defense. (D.I. 75 at 17-20)

The Court concludes, as a matter of law, that the alter ego defense is inapplicable to the instant action. "Where the intention of the parties as to who are employees is expressed in a fidelity policy, that intention will be given effect." *Bird v. Centennial Ins. Co.*, 11 F.3d 228, 232 (1st Cir. 1993). Thus, an alter ego defense asserted in the context of a fidelity bind "is *not* a common law defense; rather, it is a defense derived from *the language of the Policies themselves.*" *Id.* n.6 (emphasis in original); *see also S.E.C. v. Credit Bancorp, Ltd.*, 147 F. Supp. 2d 238, 258-59 (S.D.N.Y. 2001).

As previously noted, the Bond provides coverage for "[l]oss resulting directly from

18

dishonest or fraudulent acts committed by an Employee acting alone or in collusion with others."
(Bond at p.2, "Fidelity") In relevant part, the Bond defines an "employee" as "an *officer* or other
employee of the insured, while employed in, at, or by any of the Insured's offices or premises
covered hereunder." (Bond at p. 3, Conditions and Limitations, "Definitions" (emphasis added))
The parties do not dispute that Yao was Chief Executive Officer of SFC, and, therefore, the
Court concludes that he is a covered "employee" under the Bond.

Other courts have concluded that where a fidelity bond does not require covered
"employees" to be subject to the direction and control of the insured corporation, an insurance
company cannot assert an alter ego defense to refuse coverage. *See Credit Bancorp*, 147 F.
Supp. 2d at 261 (finding alter ego defense fails as a matter of law where fidelity policy's "terms
are clear and unambiguous – 'employee' is defined to include an 'officer' without limitation to
whether the corporation had the right to govern or control such officer"); *see also FDIC v. N.H.
Ins. Co.*, 953 F.2d 478, 482 (9th Cir. 1991) (concluding officer who was sole shareholder and
chief executive officer of insured corporation was covered "employee" under fidelity bond where
bond contained no language limiting definition of employee to those whom the insured had the
right to govern and control); *In re Lloyd's Sec., Inc.*, Adversary No. 91-1090S, 1992 Bankr.
LEXIS 1452, at *17-19 (Bankr. E.D. Pa. Sept. 17, 1992) (finding that misdeeds of insured
corporation's President were covered under fidelity bond because bond provided indemnity for
loss of property committed by an officer or employee, without exclusion).

Notably, the Bond contains no language excluding employees from coverage if they
controlled SFC. Even if Yao controlled SFC and orchestrated the fraud, as Royal alleges, the
Court concludes that Hartford cannot assert an alter ego defense because the plain language of

19

the Bond provides coverage to SFC for fraudulent acts committed by officers, without regard to the amount of control those officers exerted over SFC. Accordingly, the Court concludes that Royal is entitled to summary judgment on Hartford's Third Affirmative Defense.

### 2. Whether The Trustee Is Barred From Recovering Under the Bond Because SFC Had Knowledge Of Fraud Or Dishonesty Prior To The Bond Period

Hartford contends that regardless of whether SFC itself was a fraudulent enterprise, "the knowledge of several officers regarding SFC's business practices constitute discovery [of a covered loss] before the Bond's coverage period," and that this knowledge is imputed to SFC. (D.I. 73 at 9) Specifically, Hartford points to evidence that various officers and directors knew that SFC was making forbearance payments and that Yao was receiving sizeable shareholder distributions. (*Id.* at 8-12)

In response, Royal contends that SFC discovered Yao's fraudulent conduct during the Bond period and, therefore, Hartford's indemnity obligations are triggered. (D.I. 85 at 8) Moreover, Royal contends that SFC employees' awareness of forbearance payments or distributions to Yao does not amount to discovery of dishonest or fraudulent acts unless the employees appreciated the significance of those payments or distributions. (*Id.* at 10-13) Regardless of the employees' precise knowledge, Royal argues that in the fidelity bond context, an employee's knowledge of fraudulent and dishonest conduct is not imputed to his employer. (*Id.* at 14)

Section 3 of the Bond's Conditions and Limitations provides:

> This bond applies to loss discovered by the Insured during
> the Bond Period. Discovery occurs when the Insured first becomes

20

> aware of facts which would cause a reasonable person to assume
> that a loss of a type covered by this bond has been or will be
> incurred, regardless of when the act or acts causing or contributing
> to such loss occurred, even though the exact amount or details of
> loss may not then be known.
>
> Discovery also occurs when the Insured receives notice of
> an actual or potential claim in which it is alleged that the Insured is
> liable to a third party under circumstances which, if true, would
> constitute a loss under this bond.

(Bond at p.4, "Discovery") The Bond Period was January 31, 2002 to January 31, 2003. (Bond at p.1, "Declarations") The parties apparently agree that in order for any of Hartford's indemnity obligations under the Bond to be triggered, SFC's discovery of the loss must have occurred between January 31, 2002 and January 31, 2003. The issue, therefore, is whether SFC became aware of facts prior to January 31, 2002 which would cause a reasonable person to assume that a covered loss had been or would be incurred.

As Hartford contends, there is record evidence that prior to January 31, 2002, officers at SFC knew about SFC's practice of making forbearance payments. (Aug. 26, 2009 Messick Dep. at 324; Oct. 2009 Hawthorne Dep. at 67) Further, deposition testimony establishes that SFC officers knew that shareholder distributions were being made to Yao. (D.I. 100, Ex. GGG, Aug. 27, 2009 Messick Dep. at 499-501; Ex. FFF, Oct. 2009 Hawthorne Dep. at 259) However, Diane Messick testified that even after February 2002, she "wasn't sure" that Yao was dishonest, and that if she had been asked to do anything she thought was dishonest or illegal, she would have questioned it. (Aug. 27, 2009 Messick Dep. at 498, 500) Reviewing the record evidence in the light most favorable to SFC, the Court concludes that a reasonable factfinder could determine that, prior to January 31, 2002, SFC did not possess sufficient facts that would cause a reasonable

21

person to assume that a covered loss had occurred or would occur.[7] Accordingly, Hartford is not entitled to summary judgment on the basis that SFC discovered fraud or dishonesty prior to the Bond Period.

### 3. Whether The Trustee Is Barred From Recovering Under The Bond Because Coverage For Andrew Yao Terminated At Its Inception

Hartford contends that coverage under the Bond as to any employee terminates when the insured learns of any dishonest or fraudulent acts committed by that employee. (D.I. 73 at 12-13) Accordingly, Hartford argues that because SFC discovered Yao's fraud or dishonesty prior to the Bond's inception on January 31, 2002, the Trustee cannot recover for any alleged fraudulent or dishonest act committed by Yao. (*Id.*) In response, Royal contends that SFC was not aware of the significance of Yao's acts until after the Bond's inception. (D.I. 85 at 15) Royal contends that mere suspicion of Yao's dishonesty or knowledge of irregular business practices does not constitute discovery of previous dishonesty by SFC. (*Id.* at 15-16) Additionally, Royal argues that the Bond's termination clause is inapplicable in a situation such as this, where Yao's dishonesty was hidden from SFC, and where the SFC board was not in a position to fire Yao. (*Id.*)

In relevant part, Section 12 of the Bond's Conditions and Limitations provides that coverage as to any employee terminates "as soon as any insured, or any director or officer not in collusion with such person, learns of any dishonest or fraudulent act committed by such person at

---

[7]Hartford cites to a significant amount of deposition testimony from prior actions to support its contention that SFC officers were aware of facts prior to January 31, 2002 that would cause a reasonable person to assume a covered loss had been or would be incurred. As explained in more detail in the discussion concerning Royal's Motion To Strike, the Court declines to consider the prior deposition testimony for summary judgment purposes.

22

any time." (Bond at p.6, "Termination or Cancellation") Having previously determined that genuine issues of material fact exist as to what SFC's officers knew of the purported fraud, and when they knew it, the Court likewise finds that the same pertinent evidence could support a conclusion that SFC did not learn of Yao's fraud until after January 31, 2002. Accordingly, the Court concludes that Hartford is not entitled to summary judgment on the ground that the Bond's coverage for Yao terminated at inception.

### 4. Whether The Trustee Is Barred From Recovering Under The Bond Because His Suit is Untimely

Hartford contends that the Trustee's suit is untimely. Hartford argues that the Bond provides a two-year limitation provision, that SFC discovered the loss in January 2002 (or, at the latest, by July 2002), and that the Trustee did not file suit until October 20, 2008. (D.I. 73 at 18-19) Similarly, Hartford contends that 11 U.S.C. § 108(a)(2)'s statutory extension to file suit expired on November 4, 2004, two years after an order for relief converting the bankruptcy proceeding to one under Chapter 11 was issued. (*Id.* at 20)

In response, Royal contends the Bond does not contain a forfeiture clause expressly stating that compliance with a limitations period is a condition precedent to coverage, and, therefore, Hartford cannot rely on the suit limitation clause alone to deny coverage. (D.I. 85 at 20-21) Further, Royal contends that under Delaware law, any insurer attempting to disclaim coverage based on a suit limitation clause must demonstrate prejudice, and in the instant case Hartford has suffered no prejudice. (*Id.* at 21-22) By its Motion For Summary Judgment, Royal also argues that Hartford failed to send proof of loss forms to SFC once it received notice of the claim from SFC and, as a result, Hartford has waived the right to contest the timeliness of this

suit. (*Id.* at 22-23; D.I. 75 at 28-31) Finally, Royal argues that Hartford is estopped from asserting the suit limitation clause because of its "egregious claims handling conduct in failing to investigate, and failing to contact Royal or SFC after receiving notice of the claim." (D.I. 85 at 24; D.I. 75 at 28-31)

Contrary to Royal's contentions, the Court concludes that Delaware law does not require Hartford to demonstrate prejudice before it can disclaim coverage under a suit limitation provision in the Bond. In so arguing, Royal appears to misapprehend the difference between a suit limitation provision and a notice of loss provision. *See Hosp. Support Serv., Ltd. v. Kemper Group, Inc.*, 889 F.2d 1311, 1314-16 (3d Cir. 1989) (discussing distinction between notice of loss provisions and suit limitations provisions). The cases cited by Royal stand for the principle that an insurer must demonstrate prejudice before it can disclaim coverage based on lack of compliance with a notice of loss provision. *See New Castle Co. v. Hartford Accident & Indem. Co.*, 685 F. Supp. 1321, 1330 (D. Del. 1988) (citing *State Farm Mut. Auto. Ins. Co. v. Johnson*, 320 A.2d 345, 347 (Del. 1974)) ("Under Delaware law, in order to avoid coverage insurers must prove actual prejudice resulted from the delay in notification."). However, it is "unlikely that a Delaware Court would require an insurer to prove prejudice before effectively asserting as a defense the delay by an insurer in instituting an action beyond the time limitation of the policy." *Brandywine One Hundred Corp. v. Hartford Fire Ins. Co.*, 405 F. Supp. 147, 151 (D. Del. 1975) (discussing whether rationale in *State Farm v. Johnson*, where issue was failure to give notice, applies where issue is failure to timely file suit).

Section 5(d) of the Bond's Conditions and Limitations provides that "[l]egal proceedings for the recovery of any loss hereunder shall not be brought . . . after the expiration of 24 months

24

from the discovery of such loss." (Bond at p.5, "Notice/Proof-Legal Proceedings Against Underwriter") It is undisputed that the Trustee did not bring suit against Hartford until he filed his cross-claims on October 20, 2008. The exact date on which Royal contends discovery occurred is not clear, but for present purposes the Court can assume that discovery took place by July 2002, based on Royal's contentions that it submitted notice of loss to Hartford on July 1, 2002 and that SFC submitted notice of loss to Hartford on or about July 23, 2002. (*See* D.I. 85 at 23) Because the Trustee's claims were brought more than two years after discovery, it would appear they are untimely under the terms of the Bond.

However, because the Trustee's claims were not barred at the time of SFC's involuntary bankruptcy filing on June 5, 2002, In assessing the timeliness of the Trustee's claims the Court must also consider 11 U.S.C. § 108(a)(2). *See In re Fruehauf Trailer Corp.*, 250 B.R. 168, 185 (Bankr. D. Del. 2000) ("[I]f the statute of limitations has not run on a claim as of the bankruptcy petition date, 11 U.S.C. § 108(a) extends the time period for filing the claim . . . ."). In relevant part, 11 U.S.C. § 108(a) provides:

> If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) two years after the order for relief.

Royal does not dispute that the Order For Relief under Chapter 7 in SFC's bankruptcy was

granted on November 4, 2002, and that the statutory extension for filing claims expired on November 4, 2004. Thus, again, the Trustee's claims against Hartford are untimely.

Although the Court concludes the Trustee's claims are untimely, summary judgment in favor of Hartford will not be granted at this time because Royal has raised genuine issues of material fact concerning the applicability of the doctrines of waiver and/or estoppel. "Waiver is the voluntary and intentional relinquishment of a known right . . . It implies knowledge of all material facts and intent to waive." *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 650 A.2d 1270, 1289 (Del. 1994). "To demonstrate estoppel, it has to 'appear that the party claiming the estoppel lacked knowledge and the means of knowledge of the truth of the facts in question, that he relied on the conduct of the party against whom the estoppel is claimed, and that he suffered a prejudicial change of position in consequence thereof.'" *John Petroleum, Inc. v. Parks*, 2010 WL 3103391, at *7 (Del. Super. June 4, 2010) (citing *Wilson v. Am. Ins. Co.*, 209 A.2d 902, 904 (Del. 1965)).

Hartford does not dispute that it received a purported notice of claim from SFC (*see* D.I. 100 at 13; D.I. 76, Ex. 11, Sept. 2009 Bogdan Dep. at 121-22), but Francis Bogdan, Hartford's claims manager, apparently sent a proof of loss form to Royal's counsel, not to SFC (D.I. 76 Ex. 12). Mr. Bogdan testified that he made no further effort to contact SFC, and that he took no further action with regard to the claim after this point. (Sept. 2009 Bogdan Dep. at 107-08) Hartford contends that this alleged inaction was due to SFC's failure to provide additional information. (D.I. 100 at 14; Sept. 2009 Bogdan Dep. at 103) Taking this record evidence in the light most favorable to the Trustee, however, the Court concludes that there are genuine issues of material fact as to whether the doctrines of waiver or estoppel apply to excuse the untimeliness of

the Trustee's claims.

### 5. Whether The Trustee Is Barred From Recovering Under The Bond Because Neither SFC Nor The Trustee Submitted Proof Of Loss

Hartford contends that the Trustee's claims are barred because neither SFC nor the Trustee filed proof of loss, as required by the terms of the Bond. According to Hartford, notice of loss and formal proof of loss were both required, but the failure of the Trustee and/or SFC to submit any proof of loss bars the Trustee's claims against Hartford in their entirety. (D.I. 73 at 21-22) In response, Royal contends that Hartford has waived the right to assert, and is estopped from asserting, the Bond's proof of loss submission requirement as a defense, for the same reasons discussed previously with regard to the suit limitation clause. (D.I. 85 at 22-24)

Section 5(b) of the Bond's Conditions and Limitations provides that "[w]ithin 6 months after such discovery [of loss], the Insured shall furnish to the Underwriter, proof of loss, duly sworn to, with full particulars." (Bond at p.5, "Notice/Proof- Legal Proceedings Against Underwriter") Royal and the Trustee do not appear to dispute that proof of loss was not filed within six months of discovery of the loss, as required under the Bond. However, the Court concludes that the same pertinent evidence which precludes summary judgment in Hartford's favor on the basis of the suit limitations provision similarly precludes summary judgment in Hartford's favor on the basis of the proof of loss provision.

### 6. Whether The Trustee's Claim Of Breach Of The Covenant Of Good Faith And Fair Dealing Fails As A Matter Of Law

Hartford contends that it did not breach any express or implied covenant of the Bond, and that the Trustee's cross-claim for breach of the implied covenant of good faith and fair dealing essentially amounts to an attempt to shift SFC's obligations under the Bond to Hartford. (D.I. 73

27

at 23-24) Hartford argues that it is entitled to summary judgment on this claim because the Trustee fails to identify a specific implied provision that was breached, or to make any non-conclusory allegations of injury. (*Id.* at 24-25) Further, Hartford contends that the implied covenants the Trustee seeks would contradict express contractual provisions. (*Id.* at 26) Royal responds that the Trustee has established a prima facie case against Hartford for breach of the covenant of good faith and fair dealing. (D.I. 85 at 25)

Under Delaware law, the implied covenant of good faith and fair dealing applies to insurance contracts, and prohibits a party to a contract from acting arbitrarily or unreasonably to prevent the other party from receiving the fruits of the contract. *See Dunlap v. State Farm Fire and Cas. Co.,* 878 A.2d 434, 442 (Del. 2005). "Where an insurer fails to investigate or process a claim or delays payment in bad faith, it is in breach of the implied obligations of good faith and fair dealing underlying all contractual obligations." *Tackett v. State Farm Fire and Cas. Ins. Co.,* 653 A.2d 254, 264 (Del. 1995). Stating a claim for breach of the duty of good faith and fair dealing under Delaware law requires that "the plaintiff[ ] allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damages to the plaintiff." *Anderson v. Wachovia Mortgage Corp.,* 497 F. Supp.2d 572, 581-82 (D. Del. 2007) (citing *Fitzgerald v. Cantor,* Civ. A. No. 16297-NC, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998)).

As previously discussed, the Court concludes that there are disputed factual issues with regard to whether Hartford properly responded to SFC's notice of loss, and whether Hartford's failure to pursue the matter any further was appropriate. Considering that evidence in the light most favorable to the Trustee, the Court concludes that there is sufficient evidence for the Trustee to make out a prima facie case against Hartford for breach of the duty of good faith and

fair dealing.

**B.   Whether Hartford Is Entitled To Summary Judgment On Royal's Claims**

**1.   Whether Royal Has Standing To Bring Suit Or File Proof Of Loss**

Hartford contends that Royal is not identified as an insured under the Bond but, rather, as a joint loss payee. (D.I. 73 at 26)  As a loss payee, Royal, in Hartford's view, has no authority to enforce any provision of the Bond except the provision entitling it to joint payment of a loss properly claimed by SFC.  (*Id.* at 26-27)  Therefore, Hartford argues that Royal has no standing to file a proof of loss under the Bond or to bring suit.  (*Id.* at 28-29)

Royal asserts several different theories for its standing to bring suit against Hartford in its own right as a loss payee. (D.I. 85 at 26-27)  First, Royal contends that a loss payee may sue in its own name to recover a loss occurring under an insurance policy, and that Hartford is estopped by its own conduct from denying indemnity to Royal on the basis of its status as a loss payee. (*Id.* at 27-30)  Next, Royal argues that as a loss payee it is jointly entitled (with SFC) to any payment issued under the Bond and, therefore, it can participate in this lawsuit under the rule of permissive joinder.  (*Id.* at 35)  Alternatively, Royal contends that it was the intended third-party beneficiary of the Bond and, therefore, it has standing to bring suit under the Bond and to bring a reformation claim to establish its status as an additional insured.  (*Id.* at 31-34)  Royal additionally argues that even if it is not an insured under the Bond, it is a judgment creditor of SFC and can proceed against the Bond for satisfaction of the debt.  (*Id.* at 34-35)

"Under a fidelity insurance policy the insurer is liable only in the event of a loss by the insured and the right to recover . . . belongs solely to the insured absent some provision in the [Policy] to the contrary." *Carteret Ventures, LLC v. Liberty Mut. Ins. Co.*, 2009 WL 3230844, at

*4 (D.N.J. Oct. 2, 2009) (internal quotation marks omitted) (interpreting New Jersey law). "Thus, where the policy expressly states that recovery under the policy is limited to the named insured, . . . third party claims against the insurance proceeds must be rejected." *Id.* (internal quotation marks omitted); *see also generally Woodward v. Farm Family Cas. Ins. Co.*, 796 A.2d 638, 641-42 (Del. 2002) ("The scope of the coverage obligation [of an insurance contract] is determined by the language in the insurance policy. Where the language is unequivocal, the parties are bound by its clear meaning.").

It is undisputed that SFC is the only named insured on the Bond (Bond at p. 1, "Declarations"), and that Royal is not listed as an additional insured ( "Adding or Deducting Insureds" Rider, Bond at HAR 03310). Section 5(f) of the Bond's Conditions and Limitations provides that the Bond "affords coverage only in favor of the Insured. No suit, action, or legal proceedings shall be brought hereunder by any one other than the Insured." (Bond at p. 5, "Notice/Proof- Legal Proceedings Against Underwriter") Moreover, it is undisputed that Royal is named as a loss payee. ("Add Joint Loss Payee" Rider, Bond at HAR 03311) The Rider provides that "any loss payable under the Bond . . . shall be paid jointly to the insured and the loss payee," and that "[n]o rights or benefits are bestowed on the Loss payee other than payment of loss." (*Id.*) Accordingly, under the plain language of the Bond, Royal is jointly entitled to any payment for loss which SFC might receive, but it lacks the ability to recover against Hartford in its own right.

Turning to Royal's alleged status as a third-party beneficiary of the Bond, Delaware law provides that "[a]s a general rule, only parties to a contract and intended third-party beneficiaries may enforce an agreement's provisions. Mere incidental beneficiaries have no legally

30

enforceable rights under a contract." *NAMA Holdings, LLC v. Related World Market Ctr., LLC*, 922 A.2d 417, 434 (Del. Ch. 2007). For a party to be deemed a third-party beneficiary to a contract, "(i) the contracting parties must have intended that the third party beneficiary benefit from the contract, (ii) the benefit must have been intended as a gift or in satisfaction of a pre-existing obligation to that person, and (iii) the intent to benefit the third party must be a material part of the parties' purpose in entering into the contract." *Madison Realty Partners 7, LLC v. AG ISA, LLC*, No. Civ. A. 18094, 2001 WL 406268, at *5 (Del. Ch. Apr. 17, 2001).

There is record evidence suggesting that SFC obtained the Bond from Hartford at the behest of Royal, so that Royal would issue credit risk policies to SFC. (D.I. 76, Ex. 2, Oct. 2009 McKenzie Dep. at 35-36) Further, Hartford underwriter Jennifer Bramley testified that she received faxes from Royal requesting that Royal be named as an additional insured under the Bond. (D.I. 86, Ex. L. Aug. 2009 Bramley Dep. at 187-91) The record is devoid of any written response by Hartford, although Ms. Bramley testified that "[m]y feeling is that [I] had a verbal conversation [with SFC's agent] about the fact that [Royal] would be named as a loss payee and not additional named insured." (Aug. 2009 Bramley Dep. at 192) Viewing the evidence in the light most favorable to Royal, the Court concludes that a reasonable factfinder could find that SFC intended Royal to be a third-party beneficiary under the Bond. Accordingly, Hartford is not entitled to summary judgment against Royal on the basis of standing.

### 2. Whether Royal's Knowledge of Fraud Or Dishonesty Prior To The Bond Period Bars Coverage For Royal

Hartford contends that even if Royal was an additional insured under the Bond, SFC's own fraud precludes Royal from recovery. (D.I. 73 at 30) Hartford further contends that SFC's

knowledge of the fraud or dishonesty would be imputed to Royal, and that Royal also had independent knowledge that SFC was engaged in fraud. (*Id.* at 30-31) In response, Royal contends that neither SFC nor itself was aware of the import of what turned out to be Yao's fraudulent and dishonest conduct.

Having concluded that there are genuine issues of material fact as to whether SFC itself was a fraudulent enterprise or was the victim of Yao's fraudulent conduct, and as to SFC's knowledge of the fraud, the Court likewise concludes that Hartford is not entitled to summary judgment on the basis that Royal discovered fraud or dishonesty prior to the Bond Period.

## C. Whether Hartford Is Entitled To Summary Judgment Because The Bond Is Void *Ab Initio*

By its Motion For Summary Judgment, Hartford contends that it is entitled to summary judgment because the Bond is void *ab initio*. (D.I. 73 at 35) Hartford contends that SFC itself was a fraudulent enterprise, and that, as a matter of law, it cannot insure a fraud by SFC, the insured on the Bond. (*Id.* at 35-36) In response, and by its Motion For Summary Judgment, Royal contends that Hartford's contention is in direct contravention of applicable law. (D.I. 75 at 21; D.I. 85 at 39-40)[8] Specifically, Royal argues that an insurance policy issued by virtue of fraudulent and material misrepresentations, as Hartford alleges the Bond to have been, is voidable but is not void *ab initio*. (*Id.*) In reply, Hartford contends that it did not know that SFC was an ongoing Ponzi scheme at the time it underwrote the Bond, and that it had no intention of insuring a fraudulent enterprise. (D.I. 89 at 31-33) Therefore, according to Hartford, the Bond

---

[8]The Trustee joins in the arguments advanced by Royal in its Motion for Partial Summary Judgment (D.I. 74) and supporting memorandum (D.I. 75), as well as in Royal's reply in support thereof (D.I. 114), except for any arguments or statements made by Royal in support of its reformation claim. (*See* D.I. 78; D.I. 99)

issued as a result of fraud in the factum, not merely fraudulent inducement. (*Id.*)

The difference between fraud in the inducement and fraud in the factum is well expressed in the case of *Dougherty v. Mieczkowski*, 661 F. Supp. 267, 274 (D. Del. 1987) (internal citations and quotation marks omitted):

> Under the common law of contracts, there is a distinction between fraud in the inducement and fraud in the "factum," or execution. Fraud in the factum occurs when a party makes a misrepresentation that is regarded as going to the very character of the proposed contract itself, as when one party induces the other to sign a document by falsely stating that it has no legal effect. If the misrepresentation is of this type, then there is no contract at all, or what is sometime anomalously described as a void, as opposed to voidable, contract. If the fraud relates to the inducement to enter the contract, then the agreement is "voidable" at the option of the innocent party. The distinction is that if there is fraud in the inducement, the contract is enforceable against at least one party, while fraud in the factum means that at no time was there a contractual obligation between the parties.

In its Counterclaim and Twentieth Affirmative Defense, Hartford alleges that "[SFC] and officers and employees of [SFC] procured the Bond by fraudulently and materially misrepresenting and/or concealing . . . the fraudulent nature of SFC's student loan enterprise, the manner in which SFC handled incoming student loan payments, and the bankrupt condition of the company as alleged by Royal." (Answer ¶¶ 114, 129) The Court concludes that the alleged fraudulent transaction, as characterized by Hartford, does not amount to fraud in the factum, but rather, fraud in the inducement. Accordingly, the Bond cannot be void *ab initio* as a matter of law, and Royal is entitled to summary judgment.

33

**D. Whether Hartford Is Entitled To Summary
   Judgment Because The Bond Is Subject To Rescission**

By its Motion For Summary Judgment, Hartford contends that, under Delaware law and the terms of the Bond, it is entitled to rescind the Bond due to Royal's fraudulent procurement. (D.I. 73 at 36) Specifically, Hartford contends that SFC did not disclose the fraudulent nature of its business, or that it was near collapse, and that SFC provided fraudulent and misleading information to induce Hartford to issue the Bond. (*Id.* at 37-38) In response, and by its Motion For Summary Judgment, Royal contends that there is no evidence that SFC made any intentional misrepresentations, as is required by the Bond for rescission. (D.I. 75 at 22) Further, Royal contends that Hartford has had knowledge of the facts constituting its rescission claim for nine years, and that Hartford's failure to return the Bond premium prevents it from now seeking rescission. (*Id.* at 25-26) Finally, Royal argues that Hartford's delay in investigating SFC's claim and in pursuing rescission amounts to a waiver of the right to seek rescission of the Bond. (*Id.* at 26-28)

Because the Court concludes that there are genuine issues of material fact with regard to what SFC officers knew of the alleged fraud, and what action (or inaction) Hartford took in response to receiving notice of the loss, neither party is entitled to summary judgment on Hartford's counterclaim and affirmative defense of rescission.

## CONCLUSION

For the reasons discussed, Royal's Motion To Strike will be granted in part and denied in part, Hartford's Motion For Summary Judgment will be denied, and Royal's Motion For Partial Summary Judgment will be granted in part and denied in part. An appropriate Order follows.

34